UNITED STATES of America, Plaintiff-Appellee,

v.

James Harold DENNIS, Defendant-Appellant.

No. 97-6342.

United States Court of Appeals,

Eleventh Circuit.

Jan. 8, 2001.

Appeal from the United States District Court for the Southern District of Alabama. (NO. 96-00081-CR-1), Charles R. Butler, Jr., Chief Judge.

Before COX, WILSON and GIBSON[*], Circuit Judges.

WILSON, Circuit Judge:

James Harold Dennis appeals his sentences and convictions for bankruptcy fraud, money laundering, wire fraud and bank fraud. For the reasons below, we affirm all convictions and sentences except those for bank fraud.

## I. BACKGROUND

Dennis was convicted of five counts of bankruptcy fraud in violation of 18 U.S.C. § 152, twenty-nine counts of illegal transfer of funds (money laundering) in violation of 18 U.S.C. § 1956(a)(1)(B)(i), two counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of bank fraud in violation of 18 U.S.C. § 1344. He was sentenced to 60 months of imprisonment for the bankruptcy fraud and wire fraud counts, to be followed by three years of supervised release. He was sentenced to 125 months of imprisonment for the money laundering counts and bank fraud to be followed by five years of supervised release. His prison terms were to run concurrently for a total of 125 months and his supervised release terms were to run concurrently for a total of five years.[1]

In 1988, Dennis formed Callen, Inc. ("Callen") for the purpose of establishing and managing several convenience stores in Alabama and Mississippi. Dennis was the president and 100% owner of Callen. In 1988, Dennis also established R.A.D., Inc. ("R.A.D."). Later that year, acting on Callen's behalf, Dennis

---

[*]Honorable John R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]The jury found Dennis not guilty on counts three, seven and eight (one count of bankruptcy fraud and two counts of money laundering). The government voluntarily dismissed counts nine and ten for money laundering.

purchased the assets and assumed the debts of Dottley/Garner Investments ("Dottley"), a Mississippi company that owned and operated convenience stores. At the time of the transaction, Dottley was involved in Chapter 11 bankruptcy proceedings. Because Dennis was a convicted felon, he could not obtain a liquor or gas license in Mississippi, which was necessary to operate a convenience store. To be able to control Callen's newly acquired Mississippi convenience stores, Dennis appointed Doyce Reeves as president and 100% owner of R.A.D. Reeves later sold all of R.A.D.'s stocks to Dennis for ten dollars. In 1990, Dennis and Reeves filled out the pertinent Mississippi licensing forms.

On April 2, 1991, Callen filed for Chapter 11 bankruptcy. As we shall discuss in greater detail, the government presented evidence at trial that Dennis (1) transferred money from Callen's bank accounts into his personal accounts without reporting the transfers on his bankruptcy petition; (2) falsely stated that Callen had no bank accounts; transferred money from Callen bank accounts to his brother and failed to list them on his bankruptcy petitions; (3) back dated sales receipts to demonstrate that all of Callen's assets were sold to R.A.D. so that they could not be reached by the bankruptcy court; (4) destroyed documents related to Callen's financial affairs; and (5) wrote bad checks, impersonated a bank official and forged an attorney's signature.

The issues on appeal are: (1) whether the district court amended the indictment when it instructed the jury on the elements of bankruptcy fraud; (2) whether there was a variance between the indictment and the evidence presented at trial; (3) whether there was sufficient evidence to support Dennis's convictions for bankruptcy fraud, money laundering, wire fraud and bank fraud; (4) whether the indictment and district court's instructions deprived Dennis of a unanimous verdict and whether count one was duplicitous; (5) whether the district court erred in applying the money laundering sentencing guidelines; (6) whether the district court erred in determining the amount of loss; (7) whether the district court improperly grouped counts and (8) whether the district court erred in computing Dennis's criminal history points.

## II. DISCUSSION

(1) *Jury Instruction on Bankruptcy Fraud*

Dennis contends that the district court amended the indictment when it instructed the jury on bankruptcy fraud by omitting the term "creditors," and substituting the term "custodian of the Bankruptcy Court." The superseding indictment charged that Dennis "knowingly and fraudulently did conceal property belonging to Callen, a debtor in a case under Title 11, ..., from the United States Bankruptcy Court, ... and from creditors...." The district court gave the following jury instruction for bankruptcy fraud:

The defendant can be found guilty of [bankruptcy fraud] only if all the following facts are proved

beyond a reasonable doubt ... Second, the defendant knowingly and fraudulently concealed the property discussed in the indictment from the custodian of the Bankruptcy Court and the property belonged to the estate of the debtor.

Dennis failed to raise this argument before the district court. Therefore, we apply the plain error standard of review, inquiring whether an error occurred, whether the error was plain and whether the error "affected substantial rights." *United States v. Mitchell,* 146 F.3d 1338, 1342 (11th Cir.1998).

An amendment to an indictment occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Keller,* 916 F.2d 628, 634 (11th Cir.1990). The jury instruction on bankruptcy fraud did no such thing. It tracked the language of the statute and comported with the indictment.

Pursuant to 18 U.S.C. § 152(1) "a person who ... knowingly and fraudulently conceals from a custodian, trustee, marshal or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor" shall be fined and/or imprisoned. 18 U.S.C. § 152(1).

"Custodian" is defined by Title 11 as a "trustee, receiver, or agent under applicable law ... that is appointed or authorized to take charge of property of the debtor for the purpose of ... general administration of such property for the benefit of the debtor's creditors." 11 U.S.C. § 101(11)(C). Custodians are appointed by the bankruptcy court. *See id.* Lonnie Mixon was appointed as the trustee of the bankruptcy estate and Travis M. Bedsole was appointed as the bankruptcy administrator. The trustee and administrator are "custodians" under the plain meaning of 11 U.S.C. § 101(11)(C). Essentially, the custodian is a "custodian of the bankruptcy court." *United States v. Greenwood,* 74 F.3d 1241 (6th Cir.1996) (unpublished). Custodians or trustees " 'are creatures of the Bankruptcy Act.' " *In re Red Carpet Corp. of Panama City Beach v. Miller,* 708 F.2d 1576, 1578 (11th Cir.1983). As the trial testimonies illustrate, they are entrusted with the administration of property in the bankruptcy court's custody. *See* 11 U.S.C. § 101(11)(C); *In re Red Carpet,* 708 F.2d at 1578. However, the bankruptcy court is the "ultimate custodian" of the estate. *See id.* at 1578-79.

Under either a strict or broad construction of the term "custodian," the indictment's inclusion of the term "bankruptcy court" rather than "custodian" does not render it infirm. The indictment comports with 18 U.S.C. § 152(1). Furthermore, the indictment also included the term "creditors" as a victim of the bankruptcy fraud. It cannot be disputed that the creditors of the bankruptcy estate were entitled to the concealed monies. *See United States v. Levine,* 970 F.2d 681, 686 (10th Cir.1992).

The jury instruction did not amend the indictment by including the phrase "custodian of the bankruptcy court." It comports with 18 U.S.C. § 152(1). The district court did not plainly err in giving the instruction.

(2)     *Variance Between Indictment and Evidence at Trial*

Dennis contends that there was a fatal variance between the indictment and the proof at trial. According to Dennis, the indictment charged him with knowingly concealing property from the bankruptcy court and creditors; however, the government proved only that he made a false oath to the bankruptcy court and not that he concealed anything from creditors.

Because Dennis failed to raise this argument at the trial level, we review it under the plain error standard. *See Mitchell,* 146 F.3d at 1342. "The standard of review for whether there is a material variance between the allegations in the indictment and the facts established at trial is twofold: First, whether a material variance did occur, and second, whether the defendant suffered substantial prejudice as a result." *United States v. Chastain,* 198 F.3d 1338, 1349 (11th Cir.1999). The first prong of this test is not met because no material variance occurred.

Counts one, two, four and five of the superseding indictment charge Dennis with knowingly and fraudulently concealing property belonging to Callen from the bankruptcy court and creditors in violation of 18 U.S.C. § 152. Count six alleges that Dennis "knowingly and fraudulently did conceal, destroy, and mutilate books, documents, records and papers relating to the property and financial affairs of Callen Corporation, a debtor in a case under Title 11, ..., in violation of" 18 U.S.C. § 152.

One can violate 18 U.S.C. § 152 if he "knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor;" *or* "knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11." 18 U.S.C. § 152(1), (2). The government charged Dennis with concealment in violation of 18 U.S.C. § 152(1) rather than with making a false oath under 18 U.S.C. § 152(2).

Whether property is part of the bankruptcy estate is a factual issue for the jury. *See United States v. Blane,* 375 F.2d 249, 252-53 (6th Cir.1967) (approving jury instruction that included requirement of jury finding that property in question belonged to the bankruptcy estate); *Greenwood,* 74 F.3d 1241. There was sufficient evidence from which a jury could conclude that Dennis concealed assets belonging to the

bankruptcy estate by failing to disclose on his bankruptcy filings numerous bank accounts in the name of Callen, transfers from Callen to other accounts, a transfer of inventory to R.A.D., and an account receivable that Mantissa Corporation owed Callen. The government also proved that Dennis destroyed documents related to Callen's financial affairs. Dennis's failure to disclose the existence of property belonging to Callen's (the debtor's) estate constitutes concealment. *See United States v. Ward,* 197 F.3d 1076, 1080 (11th Cir.1999) (defendant concealed property belonging to the bankruptcy estate by failing to disclose it on his bankruptcy petition).

Upon our careful review of the record, we find no variance between the indictment and the proof at trial.

(3)     *Sufficiency of the Evidence*

Dennis contends that the evidence was insufficient to support his convictions for bankruptcy fraud, money laundering, wire fraud and bank fraud. "Whether there is sufficient evidence to support the convictions is a question of law subject to *de novo* review." *United States v. Majors,* 196 F.3d 1206, 1210 (11th Cir.1999), *cert. denied,* --- U.S. ----, 120 S.Ct. 2022, 146 L.Ed.2d 969 (2000). We review the evidence in the light most favorable to the government, making all reasonable inferences and credibility determinations in its favor. *See id.* Applying this standard of review, we address each offense in turn.

a.     *Bankruptcy Fraud*

Based on the evidence presented at trial, a reasonable jury could have found Dennis guilty of five counts of bankruptcy fraud for concealing property belonging to the bankruptcy estate. We need not discuss each of the numerous items that Dennis was charged with concealing.

Among other things, Dennis was required to disclose all bank accounts in which the debtor (Callen) had any interest as well as any transfer of Callen assets within one year preceding the commencement of the bankruptcy case. *See* 11 U.S.C., Official Bankruptcy Form 7. The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). Dennis did not disclose the property alleged in the indictment on his bankruptcy schedules or statement of financial affairs. He indicated that Callen had no bank accounts and no interest in any bank account. During his deposition, he testified that no bank accounts were in Callen's name. However, at trial the evidence established that Callen owned or had an interest in fifty-five bank accounts. In September, 1991, Dennis's accounting firm compiled a quarterly balance statement showing that Callen retained fifty bank

accounts and had extensive assets. At trial, FBI Special Agent Tim Turner explained that each of the accounts were in the name of Callen or contained funds transferred from Callen within two years of the bankruptcy filing.

Dennis contends that none of these accounts belonged to Callen because R.A.D. purchased them in 1990. This contention is belied by the evidence which demonstrates that when R.A.D. filed for bankruptcy, none of the accounts allegedly transferred in 1990 were contained in R.A.D.'s financial disclosure. Dennis also failed to disclose a transfer of inventory to R.A.D. The president of R.A.D. confirmed that no money was paid for the inventory and that he knew nothing about the sale. R.A.D.'s tax filings showed that it had no income and only $1,000 in assets.

The evidence at trial also established that Dennis concealed property from the bankruptcy court by transferring approximately 1.8 million dollars from Callen bank accounts to his personal accounts. These transfers were not reported on his bankruptcy filings. At trial, it was further proven that Dennis transferred over four hundred thousand dollars from Callen accounts to his brother and that his brother's company, Mantissa Corporation, owed Callen money as an account receivable. Neither the account receivable nor the transfers were reported on the bankruptcy filings.

At trial, the government proved that Dennis destroyed or concealed financial documents relating to Callen. He paid someone to shred Callen documents which were taken to a landfill. He asked Callen's computer analyst to duplicate Callen's books under the name of R.A.D. He told the computer analyst that lightening struck Callen's computer and erased selected files, and he also asked the analyst to delete more files. When the bankruptcy trustee went to inspect Callen's documents, Dennis told him that Callen did not have any documents. The trustee did not find any documents relating to Callen. However, when the government subpoenaed Dennis's accounting firm's records, they indicated that Callen had numerous financial records which revealed that Callen had fifty bank accounts with a total balance of over $500,000 at the time the bankruptcy petition was filed.

Based upon the foregoing evidence, a reasonable jury could conclude that Dennis was guilty of the five counts of bankruptcy fraud for which he was convicted, beyond a reasonable doubt.

b.    *Money Laundering*

Dennis was convicted of twenty-nine counts of money laundering (illegal transfer of funds) in violation of 18 U.S.C. § 1956(a)(1)(B)(i). It was alleged that Dennis

knowingly and wilfully did conduct and attempt to conduct the below-listed financial transactions

affecting interstate commerce, that is, deposits into the below-listed [personal accounts] ..., which involved the proceeds of a specified unlawful activity, that is bankruptcy fraud, a violation of Title 18, United States Code, Section 152, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit: bankruptcy fraud .... and that while conducting and attempting to conduct such financial transactions the defendant knew that the property involved in the transactions, that is the deposits ... represented the proceeds of some form of unlawful activity ... all in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and Section 2.

A defendant violates 18 U.S.C. § 1956 if "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [he] conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... knowing that the transaction is designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity...." 18 U.S.C. § 1956(a)(1)(B)(i); *see also Ward,* 197 F.3d at 1083 (citation omitted) ("To obtain a conviction under § 1956(a)(1)(B)(i), the government must prove beyond a reasonable doubt 'that the party engaged in the transaction knew that the funds used represented, in whole or in part, proceeds of a specified unlawful activity.' ").

An element of the offense is a transaction involving a financial institution. This " 'includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, ... or any other payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.' " *Id.* (quoting 18 U.S.C. § 1956(c)(3)). The statute also requires a "specified unlawful activity" to predicate money laundering. The phrase "specified unlawful activity" includes bankruptcy fraud proscribed by 18 U.S.C. § 152. *See id.* at 1081-82.

The government proved that Dennis engaged in transfers from the concealed Callen bank accounts into his personal accounts. At trial, Special Agent Ruth Frazier traced every check, listed in the money laundering counts of the indictment, which Dennis sent from a Callen account to his personal brokerage accounts. The funds were concealed from the bankruptcy court. Dennis failed to disclose these funds, and thus kept them beyond the reach of the bankruptcy court. *See Ward,* 197 F.3d at 1080 (defendant concealed property belonging to the bankruptcy estate by failing to disclose it on his bankruptcy filings); *United States v. Thayer,* 204 F.3d 1352, 1354-55 (11th Cir.2000) (defendant funneled profits from one company to other companies and fictitious business accounts and then into her personal account; evidence was sufficient to prove that she intended to conceal the funds). Additionally, while under Chapter 7 bankruptcy and therefore under the control of the trustee, Dennis directed a bank employee to wire funds from a Callen account to the Mantissa Corporation. Dennis had no authority to make this transfer and it was not disclosed to the trustee

or the bankruptcy court.

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government, a reasonable jury could have concluded that Dennis fraudulently concealed property belonging to the bankruptcy estate because he knowingly withheld information related to the property and acted to prevent the discovery of the property, thereby intending to deceive the bankruptcy court, the estate's creditors, or the custodian. This resulted in financial loss to the estate and financial gain to Dennis. *See Ward,* 197 F.3d at 1080; *see also Merriam Webster's Collegiate Dictionary* 238 (10th ed.1996) ("concealment" is defined as preventing disclosure or recognition or placing out of site).

The property itemized in the indictment came from an unlawful source because it "emanated from a bankruptcy fraud." *Levine,* 970 F.2d at 686. There was sufficient evidence from which a reasonable jury could conclude that Dennis was guilty of the money laundering offenses beyond a reasonable doubt.

c.      *Wire Fraud*

Under 18 U.S.C. § 1343, one who "having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false pretenses, representations, or promises, transmits ... by means of wire, ... in interstate ... commerce, any writings, ... or sounds for the purpose of executing such scheme or artifice" shall be fined and/or imprisoned. 18 U.S.C. § 1343. To obtain a conviction for wire fraud, the government was required to prove that Dennis "intentionally participated in a scheme to defraud" and that he "used wire communications to further that scheme." *United States v. Brown,* 40 F.3d 1218, 1221 (11th Cir.1994).

The trial evidence established that Dennis wrote numerous checks when there were insufficient funds in R.A.D.'s account at the People's Bank. The checks were made out to Ed Garner for fuel shipments. Dennis called Garner's bank impersonating an employee of People's Bank and told the person he spoke to that Dennis's insufficient checks were attributable to a computer error by People's Bank. The evidence demonstrated that no employee of People's Bank actually made the call and that People's Bank did not have any computer problems. Dennis's voice was positively identified as the caller. The evidence established that Dennis wrote approximately forty-two insufficient fund checks and that Dennis forged a letter from his attorney stating that the overdrawn account was the attorney's fault.

Presented with the foregoing evidence, a reasonable jury could conclude that Dennis was guilty of wire fraud beyond a reasonable doubt.

d.      *Bank Fraud*

Count forty-four of the indictment charges Dennis with bank fraud.  Bank fraud is established under two alternative methods.  *See United States v. Mueller,* 74 F.3d 1152, 1159 (11th Cir.1996).  To prove bank fraud under section 1344(1), the government must establish "that the defendant (1) intentionally participated in a scheme or artifice to defraud another of money or property;  and (2) that the victim of the scheme or artifice was an insured financial institution." *United States v. Goldsmith,* 109 F.3d 714, 715 (11th Cir.1997); *see also* 18 U.S.C. § 1344(1).  To prove bank fraud under section 1344(2), the government must establish "(1) that a scheme existed in order to obtain money, funds, or credit in the custody of the federally insured institution;  (2) that the defendant participated in the scheme by means of false pretenses, representations or promises, which were material;  and (3) that the defendant acted knowingly." *Goldsmith,* 109 F.3d at 715; *see also* 18 U.S.C. § 1344(2).  A conviction can be sustained under either section when the indictment and jury instructions, as in this case, charge both clauses.  *See Goldsmith,* 109 F.3d at 716.

Dennis contends that the evidence does not establish fraud or that the banks allegedly defrauded were insured by the Federal Deposit Insurance Corporation (FDIC).  "Proof of federally-insured status of the affected institution is, for ... section 1344 ... a jurisdictional prerequisite as well as an element of the substantive crime." *United States v. Key,* 76 F.3d 350, 353 (11th Cir.1996).  The contention that this element was not proved is a challenge to the sufficiency of the evidence.  *See id.*  Therefore, we view all evidence and reasonable inferences from the evidence "in the light most favorable to the verdict." *Id.*

The evidence at trial established that Dennis devised a scheme to obtain money by conducting a check kite where he would deposit insufficient funds checks drawn on a Callen account at Commercial Bank into his checking account at Deposit Guaranty National Bank and by writing checks on Callen's account, knowing that the account had insufficient funds.  Dennis had signatory authority over both accounts and signed checks from both accounts.

The testimony of FBI Special Agent Charles English was equivocal about whether Commercial Bank and Deposit Guaranty National Bank were federally insured.  Defense counsel's cross-examination of Agent English was as follows:

Q: Are these national banks that are involved in this case, sir?

A: When you say a "national bank" what are you referring to?

Q: Nationally chartered bank, banks chartered under the national laws of the [U]nited [S]tates.

A: Federally insured bank sir?

Q: Yes, sir.

A: Yes, sir.

Q: Both of them?  Do you know?

A: I would have to look at the bank—state certificate, the federal certificate to state for sure.

Q: Is the answer then—

A: I have not physically looked at the certificate for these banks.

Q: Is the answer then that you don't know?

A: I have been told by bank officials that they are federally insured.  I cannot—I did not go any further, I took their word for it.

Q: You are telling this jury that both of these banks are national banks?

A: Federally insured banks.

Q: What are the name[s] of these banks, sir?

A: Commercial State Bank.

Q: Let's stop on that one, sir.  Commercial State Bank, do you see the word national in the name of Commercial State Bank?

A: No, sir.

Q: Do you?

A: No, sir.

Q: Pardon me?

A: No, sir.

Q: Are you aware of the law that requires the use of the word national in nationally charted (sic) banks?

A: All I am aware of is that it's federally insured?

Q: I do know whether it's a national bank?

[Assistant U.S.] Attorney:  Objection, I think its been asked and answered.

The Court:  Yeah, sustained.

[Defense Counsel]:  Q:  What is the name of the other bank sir?

A: Deposit Guarant[y] National Bank.

Q: Do you know whether it's a national bank?

A: The name implies it, until I see the certificate.

Q: Do you know the difference in float time that would be applicable to a state bank as opposed to a national bank?

. . .

A: I know how the system runs. I know how it pertains on bank fraud. I am not an expert on the banking system. Just on bank fraud and check kiting as a form of bank fraud.

Q: Do you know the significance, if any, of one of these banks being a state bank, if it is?

A: I am not aware of how that would change the flow of money at all, it does not as far as I am aware.

Although Agent English's testimony does not establish beyond a reasonable doubt that Commercial Bank was federally insured, part of an exhibit admitted into evidence does. Government's exhibit thirty-four contains a letter from the vice president and cashier of Commercial Bank to FBI Special Agent Tim Turner. The letter is printed on bank stationary and contains the phrase "MEMBER FDIC" on the bottom.

In contrast, none of the documents related to Deposit Guaranty National Bank give any indication that the bank was federally insured. Even when viewed in the light most favorable to the government, the evidence and all reasonable inferences drawn therefrom do not establish that Deposit Guaranty National Bank was federally insured. The agent's conclusion that the bank was federally insured appears to be premised upon his belief that because a bank is a "national bank," it is necessarily a "federally insured bank." This reasoning lacks legal support. A "national bank" is not necessarily "federally insured." As demonstrated by pertinent statutory provisions, the two concepts are distinct and not synonymous. *See* 12 U.S.C. § 1813.[2]

---

[2]Title 12, section 1813, of the United States Code governs banks and banking. Its definitional section provides in pertinent part:

> (a) ...
>
> (1) Bank
>
> The term "bank"—
>
> (A) means any national bank, State bank, and District bank, and any Federal branch and insured branch;
>
> . . .
>
> (2) ... The term "State bank" means any bank, banking association, trust company, savings bank, industrial bank (or similar depository institution which the Board of Directors finds to be operating substantially in the same manner as an industrial bank), or other banking institution which—
>
> (A) is engaged in the business of receiving deposits, other than trust funds (as defined in this section); and
>
> (B) is incorporated under the laws of any State or which is operating under the Code of

The evidence is insufficient to establish beyond a reasonable doubt that Deposit Guaranty National Bank was federally insured. Because this element of the offense was not proven, Dennis's conviction for bank fraud cannot stand. Accordingly, we reverse Dennis's conviction for bank fraud, vacate Dennis's sentence for bank fraud—125 months' imprisonment to be followed by five years of supervised release—and remand the case for re-sentencing.

e.  *Remaining Issues*

The remaining issues raised by Dennis do not warrant discussion. We summarily reject Dennis's

---

Law for the District of Columbia (except a national bank),

. . .

(c) ...

. . .

(4) Federal depository institution

The term "Federal depository institution" means any national bank, any Federal savings association, and any Federal branch.

(5) State depository institution

The term "State depository institution" means any State bank, any State savings association, and any insured branch which is not a Federal branch.

(d) ...

(1) National member bank

The term "national member bank" means any national bank which is a member of the Federal Reserve System.

(2) State member bank

The term "State member bank" means any State bank which is a member of the Federal Reserve System.

. . .

(h) Insured bank

The term "insured bank" means any bank (including a foreign bank having an insured branch) the deposits of which are insured in accordance with the provisions of this chapter;  and the term "noninsured bank" means any bank the deposits of which are not so insured.

12 U.S.C. § 1813(a), (c), (d), (e), (h).

contentions with regard to those issues. *See* 11th Cir. R. 36-1.[3]

### III. CONCLUSION

There was sufficient evidence to sustain all convictions except that for bank fraud. We affirm in part, reverse in part and remand the case for re-sentencing. Convictions and Sentences for bankruptcy fraud, money laundering, and wire fraud are AFFIRMED. Conviction for bank fraud is REVERSED. Sentence for bank fraud is VACATED. The case is REMANDED for re-sentencing.

AFFIRMED in part, REVERSED in part, and REMANDED for re-sentencing.

---

[3]11th Cir. R. 36-1 provides:

> When the court determines that any of the following circumstances exist:
>
> > (a) judgment of the district court is based on findings of fact that are not clearly erroneous;
> >
> > (b) the evidence in support of a jury verdict is sufficient;
> >
> > (c) the order of an administrative agency is supported by substantial evidence on the record as a whole;
> >
> > (d) summary judgment, directed verdict, or judgment on the pleadings is supported by the record;
> >
> > (e) judgment has been entered without a reversible error of law; and an opinion would have no precedential value, the judgment or order may be affirmed or enforced without opinion.