[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 24, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11458
Non-Argument Calendar

_____

D. C. Docket No. 05-00021-CR-006-HL-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee
Cross-Appellant,

versus

NORMAN KYLE JARRARD,
RICHARD ERIC JARRARD, et al.,

Defendants-Appellants
Cross-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

(November 24, 2008)

Before ANDERSON, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Norman Kyle Jarrard (Kyle), Richard Eric Jarrard (Eric), and Steven Larry Jarrard (Steven) appeal their convictions and 41-month sentences for conspiring to defraud Bank of Milan and Colony Bank, in violation of 18 U.S.C. § 371 in combination with 18 U.S.C. § 1344, and knowingly defrauding a financial institution, in violation of 18 U.S.C. § 1344. Kyle, Eric, and Steven assert multiple arguments on appeal, which we address in turn. The Government also asserts one issue on cross-appeal. After review, we affirm their convictions and sentences.

I.

Kyle, Eric and Steven assert the evidence was insufficient to find that Bank of Milan was a member of the Federal Deposit Insurance Corporation (FDIC), as a fax cover letter stating "Member [FDIC]" did not establish the bank was federally insured.

If, at the close of all evidence, the defendant did not move for a judgment of acquittal, we may only reverse a conviction to prevent a manifest miscarriage of justice. *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). In order for us to find a manifest miscarriage of justice, we must find the evidence, viewed in the light most favorable to the government, was so tenuous the defendant's conviction was shocking. *Id.* To sustain a conviction under § 1344, the government must prove that the bank was insured by the FDIC, which is both a

2

substantive element of the crime and a jurisdictional prerequisite. *United States v. Dennis*, 237 F.3d 1295, 1303 (11th Cir. 2001).

In *Dennis*, the defendant conducted a check-kite scheme and was indicted for bank fraud. *Dennis*, 237 F.3d at 1303-04. At trial, an FBI agent testified the two banks involved were FDIC insured, but, on cross-examination, he admitted he had not seen the insurance certificates and simply had accepted the banks officials' word they were insured. *Id.* at 1304. We held the FBI agent's testimony did not establish the banks were federally insured, but stated a letter sent from the vice president of one of the banks to the FBI was sufficient to establish beyond a reasonable doubt the bank was federally insured because the bank stationary on which the letter was written stated "MEMBER FDIC." *Id.* We reversed the conviction, however, because there was no evidence the second bank was federally insured. *Id.* at 1305.

Because Kyle, Eric, and Steven did not renew their motions for judgment of acquittal after the district court reopened the case and admitted the fax cover sheet, we determine only whether their convictions resulted in manifest injustice. *See Bender*, 290 F.3d at 1284. The fax cover sheet stating "Member [FDIC]" was sufficient to establish the Bank of Milan was federally insured. *See Dennis*, 237 F.3d at 1304. Accordingly, their convictions did not result in a manifest injustice.

II.

Kyle, Eric, and Steven contend the district court applied the wrong standard of proof in determining the loss amount for purposes of sentencing. We review sentencing issues not raised before the district court for plain error. *See United States v. Mangaroo*, 504 F.3d 1350, 1353 (11th Cir. 2007). The Guidelines provide that, when a defendant is convicted of conspiracy to commit multiple offenses, he shall be sentenced as if he had been convicted on a separate count of conspiracy for each offense. U.S.S.G. § 1B1.2(d). The commentary to § 1B1.2 provides:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense. Note, however, if the object offenses specified in the conspiracy count would be grouped together under § 3D1.2(d) (*e.g.*, a conspiracy to steal three government checks) it is not necessary to engage in the foregoing analysis, because § 1B1.3(a)(2) governs consideration of the defendant's conduct.

*Id.* § 1B1.2(d), cmt. (n.4).

Because the counts were grouped together, pursuant to § 3D1.2(d), the district court was not required to find, beyond a reasonable doubt, that Kyle, Eric, and Steven committed each object of the conspiracy. Instead, the general rule that

4

a sentencing court is permitted to find facts by a preponderance of the evidence applied, and thus, the district court did not plainly err in finding the loss amount by a preponderance of the evidence. *See Mangaroo*, 504 F.3d at 1353; *United States v. Campbell*, 491 F.3d 1306, 1314 n.11 (11th Cir. 2007) (stating a district court may consider facts proven by a preponderance of the evidence during sentencing).

## III.

Kyle, Eric, and Steven assert the district court incorrectly determined the loss amount that Bank of Milan suffered as a result of their fraud. We review the district court's fraud loss calculation for clear error. *United States v. Hernandez*, 160 F.3d 661, 666-67 (11th Cir. 1998). Our review of a restitution order under the Mandatory Victim Restitution Act (MVRA) involves three standards of review. *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 1295 (2008). The legality of a restitution order is reviewed *de novo*, the value of the lost property is reviewed for an abuse of discretion, and the restitution order's underlying factual findings are reviewed for clear error. *Id.* A defendant can be held responsible for all losses resulting from a co-conspirator's reasonably foreseeable acts conducted in furtherance of the conspiracy. *United States v. Dabbs*, 134 F.3d 1071, 1082 (11th Cir. 1998).

Under the MVRA, the district court is required to order a defendant to pay restitution to the victim of a loss of property. 18 U.S.C. § 3663A. Under U.S.S.G. § 2B1.1, a defendant's offense level is determined by the amount of loss attributed to the fraud. *See* U.S.S.G. § 2B1.1(b)(1). The district court is only required to make a reasonable estimate of the loss, but the court cannot base its calculation on mere speculation. *Id.* § 2B1.1(b)(1), cmt. (n.2(c)); *United States v. Gupta*, 463 F.3d 1182, 1200 (11th Cir. 2006) (discussing former U.S.S.G. § 2F1.1, which has been consolidated with § 2B1.1), *cert. denied*, 127 S. Ct. 2446 (2007). The government must establish the loss calculation with specific evidence. *Gupta*, 463 F.3d at 1200.

*A. Kyle and Steven*

The district court found that all of Bank of Milan's loss was fraud loss because Kyle and Steven fraudulently misrepresented the purpose for which the loan was obtained, and concealed their debt to Colony Bank at the time of the SBA loan, but the court did not identify the specific fraudulent misrepresentations to which it was referring or the facts that it found that Kyle and Steven concealed. Based on the Government's arguments during the sentencing hearing, it appears that Kyle and Steven are correct in assuming, with regard to the fraudulent misrepresentations, that the court must have found that they did not intend to

6

concentrate on increasing Eagle Carpet Mills' sales, as they indicated in the SBA loan application. It also appears that Kyle and Steven are correct that they did not shut down Eagle Carpet Mills as soon as the company received the SBA loan, as it had gross receipts of $1,302,910 and $456,785 in 2001 and 2002, respectively. Additionally, Kyle and Steven are correct that their repayment history indicates that, at the time they received the loan, they intended to repay it, as they made all but two of the monthly payments on time for the first two-and-a-half years after the loan.

Contrary to Kyle's and Steven's assertions, however, other evidence in the record supports the court's finding they made a material misrepresentation in the SBA loan application when they stated they would use the loan to concentrate on increasing Eagle Carpet Mills' sales. Specifically, the spreadsheet listing Express Carpet Sales loans from Colony Bank shows that, in the 9 months after the SBA loan closed, the company received 12 different loans, totaling $504,958.99, which implies that Kyle and Steven were concentrating on increasing the business of Express Carpet Sales immediately after receiving the SBA loan. Therefore, the Government presented evidence from which the district court could have found, by a preponderance of the evidence, that Kyle and Steven did not intended to focus on increasing the sales of Eagle Carpet Mills, as stated in the SBA loan application,

7

but were focused on increasing business at Express Carpet Sales, and thus, the court did not clearly err in finding that all of Bank of Milan's loss was attributed to material misrepresentations. *Robertson*, 493 F.3d at 1330*; Gupta*, 463 F.3d at 1200;; *Hernandez*, 160 F.3d at 666-67. Because the evidence supports the district court's finding based on the fact that Kyle and Steven made a material misstatement in the SBA loan application, this Court does not need to address Kyle's and Steven's additional argument that they did not conceal their Colony Bank debt from Bank of Milan.

*B. Eric*

The district court did not err in finding Eric was responsible for Bank of Milan's loss, to the extent that Kyle and Steven were responsible, despite the fact that he no longer was with the bank at the time of the SBA loan. Eric was convicted of conspiring with Kyle and Steven to defraud banks through the use of fraudulent statements, and, since Eric was aware that Kyle and Steven were defrauding Colony Bank, it was reasonably foreseeable to him that they also would defraud Bank of Milan, as he knew that their business was struggling financially. *Dabbs*, 134 F.3d at 1082.

IV.

Kyle, Eric, and Steven contend the district court erred in finding their fraud involved sophisticated means. We review a district court's findings of fact for clear error and its interpretation of the Sentencing Guidelines *de novo*. *United States v. Dorman*, 488 F.3d 936, 938 (11th Cir.), *cert. denied*, 128 S. Ct. 427 (2007). A finding that sophisticated means were used is a finding of fact reviewed for clear error. *United States v. Barakat*, 130 F.3d 1448, 1456-57 (11th Cir. 1997).

The Guidelines provide for a two-level enhancement when a fraud involves "sophisticated means." U.S.S.G. § 2B1.1(b)(8)(C) (2003). The Guidelines define sophisticated means as:

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

*Id.* cmt. (n.6(B)). While we have not expressly stated what qualifies as sophisticated means, we have held "sophisticated means involves more than minimal planning." *United States v. Humber*, 255 F.3d 1308, 1314 (11th Cir. 2001) (holding "sophisticated means" and the now defunct "more than minimal planning" enhancements could be applied cumulatively).

9

The district court did not clearly err in applying a sophisticated means enhancement for Kyle and Steven, as their fraudulent scheme occurred over a period of time, involved the use of a bank insider, and involved hiding the true purposes for which the loaned money was going to be used. Additionally, the district court did not clearly err in applying a sophisticated means enhancement for Eric, as he used "straw borrowers" to hide from Colony Bank that he was approving loans for a business that he owned.[1]

V.

On cross-appeal, the Government asserts the district court erred in finding that Kyle, Eric, and Steven were not responsible for the full amount of Colony Bank's loss.

The district court found the Government failed to meet its burden of establishing Colony Bank's specific loss amounts attributable to specific acts of fraud, with the exception of the counts for which Eric was convicted, as the Government simply argued Eric had committed fraud in making loans to Kyle and Steven, but it did not provide the court with evidence of the exact loss amount attributed to the acts of fraud. Therefore, the Government's argument the district

---

[1] To the extent Eric asserts the district court erred in applying the sophisticated means enhancement because he also received an enhancement for use of a special skill, he has waived the argument, as he does not provide any support for his assertion the enhancements could not be applied together.

10

court did not make any factual findings is inaccurate. Additionally, the Government's argument there was no other explanation for the entire loss amount, other than that it resulted from fraud, is inaccurate, as there was evidence presented at trial from which the court could have found that not all loans made by Colony Bank involved an act of fraud. Specifically, the court heard the following testimony: (1) Dampier testified Eric did not mail most of the assignment letters to Kyle's and Steven's customers, but this statement implies Eric did send some of the letters, (2) Eric included the debt to Bank of Milan in several of the credit memoranda that he prepared for the loan committee; (3) Taylor testified it was his understanding that Express Carpet Sales, Kyle's business, was independent from Steven's business; and (4) Express Carpet Sales had its own tax identification number and filed taxes independent of Jarrard Textile Sales and Eagle Carpet Mills. Since it was possible for some of the loans to have been made without fraud, the Government was required to prove Colony Bank's loss amount resulting from the acts of fraud by doing more than arguing there were some acts of fraud and the total loss was $736,650.41. *See* 18 U.S.C. § 3664(e); *Gupta*, 463 F.3d at 1200. The Government failed, however, to provide the district court with any evidence connecting specific loss amounts to acts of fraud, and thus, the district

11

court did not clearly err in finding the Government failed to meet its burden of proof.

**AFFIRMED.**