[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 23, 2011
JOHN LEY
CLERK

No. 10-11715
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cr-20014-AJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WELBY R. PENA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 23, 2011)

Before EDMONDSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Welby R. Pena appeals his convictions for making a false statement in the
application and use of a passport, 18 U.S.C. § 1542, making a false statement and
representation of a social security number, 18 U.S.C. § 1001(a)(2) and 42 U.S.C. §

408(a)(7)(B), and aggravated identify theft, 18 U.S.C. § 1028A(a)(1). Knowing that he was ineligible for a United States passport, Pena applied for a passport using the date of birth and parental information of another person named Welby Pena ("W.P.") and the social security number of a minor female. No reversible error has been shown; we affirm.

Pena raises five issues on appeal. First, he challenges the sufficiency of the indictment's aggravated identity theft count.[1] He contends that the indictment did not allege properly the "means of identification" element because a date of birth alone is insufficient to identify a specific person for purposes of section 1028A.

Whether an indictment sufficiently alleges an offense is a question of law that we review de novo. United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009). "A criminal conviction will not be upheld if the indictment upon which it is based does not set forth the essential elements of the offense." United States v. Gayle, 967 F.2d 483, 485 (11th Cir. 1992) (en banc).

The aggravated identity statute requires an enhanced sentence of two years if a person "during and in relation to any felony violation enumerated in subsection (c) [which includes violation of 18 U.S.C. § 1542], knowingly

---

[1]The indictment charged Pena with "knowingly possess[ing] and us[ing], without lawful authority, a means of identification of another person, that is, the date of birth of 'W.P.,' in violation of [18 U.S.C. § 1028A(a)(1)]."

transfers, possesses, or uses, without lawful authority, a means of identification of another person . . . ." 18 U.S.C. § 1028A(a)(1), (c)(7). "Means of identification" is defined as "any name or number that may be used, <u>alone or in conjunction with any other information</u>, to identify a specific individual, including any . . . name, social security number, <u>date of birth</u>, [or] official State or government issued driver's license or identification number . . . ." 18 U.S.C. § 1028(d)(7)(A) (emphasis added).

Pena's indictment sufficiently alleged the "means of identification" element of aggravated identity theft by specifying W.P.'s date of birth. Pena used W.P.'s full date of birth together with a certified copy of W.P.'s birth certificate and the names of W.P.'s parents, Bilfredo Pena and Antonia Leez. Because the date of birth taken in conjunction with this other information was sufficient to identify a specific person, it qualified as a "means of identification" for purposes of section 1028A.

Pena also argues that the district court's jury instruction constructively amended the indictment's aggravated identity theft count, in violation of the Fifth Amendment.[2] Because Pena failed to raise this argument in the district court, we

[2]In his reply brief, Pena argues for the first time that the prosecutor's closing arguments also improperly expanded the indictment. Because Pena failed to raise this issue in his initial brief, he has abandoned it. <u>See United States v. Magluta</u>,

3

review only for plain error, "inquiring whether an error occurred, whether the error was plain and whether the error 'affected substantial rights.'" See United States v. Dennis, 237 F.3d 1295, 1299 (11th Cir. 2001).

"A constructive 'amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" United States v. Castro, 89 F.3d 1443, 1452-53 (11th Cir. 1996). "In determining whether an indictment was constructively amended, we must assess . . . the court's [jury] instructions 'in context' to see whether the indictment was expanded either literally or in effect." Id. at 1453.

Pena argues that, by using the phrase "the means of identification at issue" in its jury instructions, the district court constructively amended his indictment to include both W.P.'s date of birth, as specified in the indictment, and W.P.'s birth certificate, which was discussed at length during trial but not charged in the indictment. When reviewed in context, however, the district court used this phrase in setting out the generic elements of the offense. The court then defined correctly the term "means of identification" to include "any name, Social Security number, date of birth, or official state or government issued driver's license or

_____

418 F.3d 1166, 1185-86 (11th Cir. 2005).

4

identification number." Based on this record, we cannot conclude that the court committed plain error.

Next, Pena argues that the government failed to establish that he knew that the date of birth he used on his passport application actually belonged to a real person. We review the sufficiency of evidence de novo, viewing the evidence "in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor." United States v. Garcia-Bercovich, 582 F.3d 1234, 1237 (11th Cir. 2009), cert. denied by 130 S.Ct. 1562 (2010). We will affirm a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.

To sustain a conviction under section 1028A(a)(1), the government must demonstrate that the defendant knew that the means of identification used belonged to a real person. United States v. Gomez-Castro, 605 F.3d 1245, 1248 (11th Cir. 2010) (citing Flores-Figueroa v. United States, 129 S.Ct. 1886, 1894 (2009)). "Both the circumstances in which an offender obtained a victim's identity and the offender's later misuse of that identity can shed light on the offender's knowledge about that identity." Id.

Drawing all reasonable inferences in favor of the government, a rational trier of fact could have found beyond a reasonable doubt that Pena knew that W.P.

was a real person when he used W.P.'s date of birth and birth certificate to apply for a passport. See id. Although Pena received W.P.'s birth certificate in error from the city clerk's office,[3] we can infer that he knew the city clerk's office maintained and provided birth certificates of real people. See Gomez-Castro, 605 F.3d at 1249 (stating that "knowledge can be inferred reasonably based on ordinary human experience for which no special proof is required; a trier of fact can rely on common sense"). Because Pena had applied for and been denied a passport in the past, we can also infer that he knew that the federal government would attempt to verify the authenticity of his identification. See id. at 1249-50; United States v. Holmes, 595 F.3d 1255, 1258 (11th Cir. 2010), cert. denied by 131 S.Ct. 1546 (2011) (concluding that, even though the defendant lacked "detailed knowledge" of the government's verification processes, a reasonable jury could have found that she knew that she was using a real person's identity when she subjected it repeatedly to government scrutiny).

Pena also contends that Postal Inspector Juan Vargas's testimony

---

[3]After his arrest, Pena told officers that when he requested his own birth certificate from the city clerk's office, the clerk mistakenly sent him the wrong birth certificate. He admitted that, because he was unable to obtain a passport in his own name and needed to make an emergency international trip, he used this other birth certificate to apply for a passport.

constituted inadmissible hearsay and violated the Confrontation Clause.[4]  Because

Pena raises this argument for the first time on appeal, we review only for plain

error.  See Dennis, 237 F.3d at 1299.  We will not reverse unless a plain error was

prejudicial, meaning that it "affected the outcome of the district court

proceedings."  See United States v. Arbolaez, 450 F.3d 1283, 1291 (11th Cir.

2006).

Even if we assume --without deciding -- that the district court plainly erred

in admitting Vargas's testimony, Pena failed to demonstrate that the alleged error

was prejudicial.  Given the other admissible evidence of Pena's guilt -- including

his own statement to police that he knowingly used W.P.'s birth certificate in his

passport application -- no reasonable probability exists that, but for this alleged

error, the outcome of the proceedings would have been different.  See id.

Pena also argues that the district court violated his Fifth Amendment due

---

[4]As part of his defense, Pena asserted that, as soon as he realized that he had used the wrong birth certificate in his passport application, he sent a letter to the National Passport Agency canceling his application.  In support of that defense, he produced a copy of his alleged letter and a certified mail receipt, dated 31 October 2008.  In rebuttal, the government called Vargas, who testified that the certified mail receipt's bar code indicated that the receipt was issued on or after 6 April 2009 and, thus, did not exist when Pena claimed to have received it.  Pena's objections to Vargas's testimony stem from the fact that, as part of his investigation in this case, Vargas learned how to read and interpret the bar code information from another person.

7

process rights when it denied his motion for a new trial, after refusing to allow him to call a witness at the evidentiary hearing. We review a district court's ruling on a motion for a new trial for abuse of discretion. United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003). To warrant a new trial based on newly discovered evidence a defendant must show these things:

> (1) the evidence was discovered after trial, (2) [his] failure . . . to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

Id.

Pena filed a motion for a new trial based on newly discovered evidence and submitted affidavits from three postal employees who made statements about the authenticity of Pena's certified mail receipt. The district court held an evidentiary hearing during which a government witness verified that Pena's certified mail receipt was issued on or after 6 April 2009. Pena then stated that he wanted to present a rebuttal witness whose name he did not know and who was not present at the hearing. The district court concluded -- and Pena's lawyer conceded -- that the evidence Pena relied on in his motion for new trial was not newly discovered. The court also determined that the evidence Pena sought to present could have been discovered before trial with due diligence and that a different trial was unlikely to

8

produce a new result.  Because Pena's proposed witness's testimony would not change the court's ultimate conclusion, the court refused to allow Pena to delay further the proceedings by calling another witness.  On this record, we see no abuse of discretion.  See id.

AFFIRMED.