[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12255

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CASEY DAVID CROWTHER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:20-cr-00114-JES-MRM-1

_____

Before WILSON, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Casey Crowther appeals the district court's denial of his motion for judgment of acquittal after a jury found him guilty of one count of bank fraud, in violation of 18 U.S.C. § 1344; one count of making a false statement to a lending institution, in violation of 18 U.S.C. § 1014; and two counts of illegal monetary transactions, in violation of 18 U.S.C. § 1957. He also appeals the district court's calculation of the loss amount under the Sentencing Guidelines.

On appeal, Crowther first argues that the district court erred in denying his motion for judgment of acquittal because he did not violate the terms of his Paycheck Protection Program (PPP) loan agreement; and even if he did, he did not violate the law because money is fungible, and he spent the full amount of the $2.1 million PPP loan on authorized expenses. Second, Crowther argues that his sentence is subject to reversal because the district court improperly relied on Application Note 3(A) to U.S.S.G. § 2B1.1 to calculate the loss amount based on the intended loss rather than the actual loss. We will address each argument in turn.

## I. Judgment of Acquittal

### A. Standard of Review

"We review de novo whether the evidence was sufficient to sustain a criminal conviction." *United States v. Davis*, 854 F.3d 1276, 1292 (11th Cir. 2017). The district court's denial of "motions for a

judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000) (per curiam). We "view the facts and draw all reasonable inferences therefrom in the light most favorable to the government." *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001) (per curiam) (quoting *United States v. Slocum*, 708 F.2d 587, 594 (11th Cir. 1983)).

"It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990). This is so because "[a] jury is free to choose among reasonable constructions of the evidence." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983) (quotation marks omitted). Thus, we sustain a verdict "where there is a reasonable basis in the record for it." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). A judgment of acquittal is warranted only where no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Almanzar*, 634 F.3d 1214, 1221 (11th Cir. 2011).

### B. Applicable Law

It is illegal to knowingly execute a scheme or artifice (1) "to defraud a financial institution," or (2) to obtain money from a financial institution "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(1), (2). Subsections

(1) and (2) of § 1344 present "two alternative methods" for establishing the offense. *United States v. Dennis*, 237 F.3d 1295, 1303 (11th Cir. 2001). A scheme to defraud under § 1344(1) is a scheme to deprive someone of "something of value by trick, deceit, chicane, or overreaching." *United States v. Takhalov*, 827 F.3d 1307, 1312–13 (11th Cir. 2016) (quotation marks omitted).

Further, it is illegal to knowingly make any false statement or report for the purpose of influencing in any way the action of a bank regarding any application or loan. 18 U.S.C. § 1014.

Finally, it is illegal to knowingly engage in monetary transactions in "criminally derived property of a value greater than $10,000 . . . derived from specified unlawful activity." *Id.* § 1957(a). Criminally derived property is "any property constituting, or derived from, proceeds obtained from a criminal offense." *Id.* § 1957(f)(2). "Specified unlawful activity" includes violations of Sections 1344 (bank fraud) and 1014 (making a false statement to a lending institution). *Id.* §§ 1957(f)(3); 1956(c)(7)(A), (D).

### C. Discussion

Here, the district court did not err in denying Crowther's motion for a judgment of acquittal because the evidence was sufficient for a reasonable jury to conclude that he violated his loan agreement.

As to his conviction for bank fraud, the evidence supported a finding that Crowther defrauded the bank by lying about his need for, and the purpose of, his PPP loan. In his loan applications, Crowther represented that his roofing company would use the

loan for payroll, rent, mortgage interest, and utilities, and that the loan was necessary to support the company's ongoing operations. However, the government presented evidence of 39 fake social security and green cards for nonexistent employees and new-hire paperwork for several of Crowther's family members who were added to the company's payroll for about one month. None of the checks that were issued to these new hires were ever cashed—except for one check issued to "Agustin Castillo," which was deposited about three months later into one of Crowther's own accounts. The government also presented evidence showing Crowther, after receiving the loan, used the money to buy a boat and a horse; to pay off credit card debt for business and personal expenses; and to pay down debt he owed to a former business partner. The government's evidence showed Crowther obfuscated the purpose of various wire transfers by telling the bank that they were for business purposes (such as equipment or roofing material) when the wire transfers were really for other purposes (i.e., the boat and the horse). In light of all this evidence, the jury could reasonably conclude that Crowther committed bank fraud by executing a scheme to defraud the bank, or, alternatively, by obtaining money through false pretenses. *Dennis*, 237 F.3d at 1303.

Similarly, for his conviction for making a false statement to a lending institution, the evidence supported a finding that Crowther made false statements to the bank in order to secure the PPP loan. On the loan application, Crowther affirmed that it was "for legitimate business purposes," such as payroll, costs related to the continuation of group health care benefits, business-related

mortgage interest payments, rent and utility payments, etc.  However, the evidence showed Crowther used the money for several non-legitimate purposes.  The jury could reasonably find that Crowther knowingly made false statements to the bank in violation of 18 U.S.C. § 1014.

Finally, for his conviction for illegal monetary transactions, the evidence supported a finding that Crowther used the unlawfully derived money for two transactions greater than $10,000.  First, the government presented evidence showing that on April 21, 2020, Crowther transferred $100,000 from his company's new PPP account to Crowther's former business partner.  Second, on April 24, 2020, Crowther transferred $689,417 from the PPP account to Sara Bay Marina to purchase the boat.  From this evidence, a reasonable jury could find Crowther made two illegal monetary transactions in violation of 18 U.S.C. § 1957(a).

Accordingly, we affirm as to this issue.

## II.  Loss Amount

### A. Standard of Review

We review for plain error a sentencing challenge raised for the first time on appeal.  *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001) (per curiam).  Plain error lies only where "(1) there is an error in the district court's determination; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*  If the explicit language of a statute or rule does not

specifically resolve an issue, there can be no plain error where neither our court's nor the Supreme Court's precedent directly resolves it. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).

## B. Applicable Law

Section 2B1.1 of the Sentencing Guidelines contains the offense-level calculation for theft and fraud offenses. Section 2B1.1(b)(1)(I) provides for an offense-level increase of 16 if the loss caused by the offense exceeds $1,500,000 but is no more than $3,500,000.

The section itself does not define "loss." However, Application Note 3 to the section defines "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense," and "intended loss" as "the pecuniary harm that the defendant purposely sought to inflict . . . includ[ing] intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* § 2B1.1, comment n.3(A)(i), (ii). Application Note 3(A) directs courts to calculate loss as "the greater of actual loss or intended loss." *Id.* comment n.3(A); *United States v. Moran*, 778 F.3d 942, 973 (11th Cir. 2015).

Following Supreme Court precedent, we recently held that courts should only defer to the commentary when—after exhausting all traditional tools of construction—we are left with the conclusion that the Guidelines are "genuinely ambiguous." *United States v. Dupree*, 57 F.4th 1269, 1274–75 (11th Cir. 2023) (en banc) (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414–15 (2019)). However,

when ambiguity exists and deference to the commentary is warranted, the Supreme Court has held that the commentary to the Guidelines is "authoritative unless it violates the Constitution, or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

## C. Discussion

Here, Crowther cannot demonstrate that the district court committed plain error in using Application Note 3(A) to calculate the applicable loss amount as the intended loss, rather than the actual loss, under § 2B1.1(b)(1)(I) of the Sentencing Guidelines.

Crowther argues that under our recently published decision in *Dupree*, "loss" simply means loss. He argues that his case must be remanded for resentencing based on loss alone.[1] Crowther is partially correct—*Dupree* did overrule our precedent on how the Guidelines and the commentary interact, but under plain error review, remand is not warranted because the district court did not plainly err by referring to the commentary. For an error to be plain, the issue must be "specifically and directly resolved by . . . on point precedent from the Supreme Court or this Court." *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019). Contrary to

---

[1] At Crowther's request, we permitted supplemental briefing on the sentencing guidelines issue after our court agreed to rehear *United States v. Dupree* en banc. 25 F.4th 1341 (11th Cir. 2022) (Mem.). After our recent decision in *Dupree* was published, Crowther filed supplemental authority which mostly reiterated the same arguments in his initial supplemental briefing.

Crowther's arguments, *Dupree* did not "specifically and directly resolve[]" whether § 2B1.1's definition of "loss" is ambiguous. *See United States v. Verdeza*, No. 21-10461, 2023 WL 3728960, *9 (11th Cir. May 31, 2023) (holding the same).

Thus, Crowther cannot demonstrate that the district court committed plain error in using Application Note 3(A) to calculate the applicable loss amount as the intended loss, rather than the actual loss, under § 2B1.1(b)(1)(I).

Accordingly, we affirm as to this issue.

**AFFIRMED.**