United States Court of Appeals,

Eleventh Circuit.

No. 95-8052.

UNITED STATES of America, Plaintiff-Appellee,

v.

Michael KEY, Defendant-Appellant.

Feb. 28, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-65-1), Marvin H. Shoob, Judge.

Before EDMONDSON, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Michael Key appeals his conviction on charges of bank fraud under 18 U.S.C. § 1344 and making false statements on a loan application under 18 U.S.C. § 1014. He contends that there was insufficient evidence to convict him, that the government improperly introduced evidence of earlier bad acts, that the district court abused its discretion by denying a continuance, and that his sentences for bank fraud and making false statements are multiplicitous.[1] We see no error and affirm the convictions.

I.

Key visited the Trust Company Bank ("Trust Company" or the "bank") in 1990 seeking a residential loan. Trust Company is

---

[1] Counsel for Key indicated at oral argument that she would address no sentencing issues because "Defendant-appellant is now out of custody and therefore the sentencing issue would be somewhat moot in this case...." We therefore treat the multiplicity issue and other sentencing issues as either moot or, in the light of the above statement, abandoned. *See generally Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 6 (11th Cir.1989) (discussing abandonment of claims on appeal, and citing cases).

federally insured, as indicated by several signs posted inside the bank. Key met with an officer of the bank for a loan application. Later, Key filled out the loan application but used the name of his deceased brother. He indicated on the application that the applicant had no outstanding civil judgments against him, when in fact Michael Key had several. The Trust Company Bank name and logo appeared in large print on the loan application. No other financial institution was named on the application.

The record is vague on the events that transpired thereafter, but the facts appear to be as follows. The loan application was sent by Trust Company to SunTrust Mortgage, Inc., a non-federally insured institution. SunTrust had responsibility for processing the loan application and verifying the information contained in it, but final approval of the loan was made after involvement by officers at both entities. The check presented to Key's attorney at the closing named Trust Company Bank as the drawee bank. Some time after the loan proceeds were disbursed to Key, SunTrust sold the mortgage to Trust Company, in accordance with a standing arrangement between the institutions.

After his arrest, Key was tried before a jury in the Northern District of Georgia and convicted of the counts named above.

## II.

Key asserts that his convictions for bank fraud and making false statements cannot stand because the government failed to prove he intended to victimize a federally-insured financial institution. Proof of federally-insured status of the affected institution is, for both section 1344 and section 1014, a

jurisdictional prerequisite as well as an element of the substantive crime. *E.g., United States v. Williams,* 592 F.2d 1277, 1281-82 (5th Cir.1979). Whether the defendant knew of the victim institution's insured status is not important. That the defendant knowingly directed his conduct at a bank that the government can prove was insured is enough. *See United States v. Bowman,* 783 F.2d 1192, 1198 (5th Cir.1986) (citing *United States v. Lentz,* 524 F.2d 69 (5th Cir.1975)).[2] Key challenges the sufficiency of the evidence only insofar as the insured status of the victim bank is concerned; he does not otherwise question that his conduct does come within section 1344 and section 1014.[3]

Whether the government proved the jurisdictional element is

---

[2]Some cases suggest that a sort of "transferred' intent might be sufficient, so that one intending to victimize a non-insured institution who by his acts harms an insured institution may be held accountable in federal court. *See, e.g., United States v. Brandon,* 17 F.3d 409, 426 (1st Cir.1994) ("We hold that it is also unnecessary for the government to prove that a defendant knows which particular bank will be victimized by his fraud as long as it is established that a defendant knows that *a* financial institution will be defrauded.") (emphasis in original). Because we conclude the evidence supports that Key knew his conduct would affect Trust Company and in fact did affect Trust Company, we need not pass on the validity of such a concept.

[3]While the legislation at issue was "designed to provide an effective vehicle for the prosecution of frauds in which the victims are financial institutions that are federally created, controlled, or insured," *see* S.Rep. No. 225, 98th Cong., 2nd Sess. 377 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3517, a bank need not suffer financial injury to be a "victim" under either statute. *United States v. Solomonson,* 908 F.2d 358, 364 (8th Cir.1990) (bank fraud); *United States v. Waldrip,* 981 F.2d 799, 806 (5th Cir.1993) (bank fraud and false statements). Nonetheless, the insured bank cannot be a mere bystander to the fraudulent transaction. *United States v. Blackmon,* 839 F.2d 900, 904-06 (2d Cir.1988) (where bank was neither target nor victim of defendant's scheme, bank fraud statute did not apply).

measured as a challenge to the sufficiency of the evidence. *United States v. Schultz,* 17 F.3d 723, 725 (5th Cir.1994). For appellants, that standard, "though more lenient than the plain error standard, is still quite formidable." *Id.* All evidence and inferences therefrom are viewed in the light most favorable to the verdict. *Id.*

The issue is whether Key knew or intended that his conduct might place Trust Company, the insured institution, at risk of financial harm. *United States v. Ragosta,* 970 F.2d 1085, 1089 (2d Cir.1992). The knowledge or intent required for the two statutes at issue is as follows: The requisite intent for bank fraud is present if defendant's conduct was "designed to deceive a federally chartered or insured financial institution into releasing property, with the intent to victimize the institution by exposing it to actual or potential loss." *Id.* (citations omitted). In a similar way, a defendant convicted of violating section 1014 must have acted "for the purpose of influencing ... the action of a federally insured institution engaged in a lending activity." *United States v. McDow,* 27 F.3d 132, 135 (5th Cir.1994) (internal quotation marks omitted).

Upon review of the record, and drawing all inferences in favor of the verdict, we conclude that a reasonable jury might have found beyond a reasonable doubt that the jurisdictional element was satisfied. That Key knew his scheme was directed toward "deceiving" and "influencing" Trust Company, rather than SunTrust only, was amply evidenced. The application he filled out was printed on paper conspicuously marked with the Trust Company name,

accompanied by the bank's logo.  The building in which he filled out the application was a branch of the Trust Company, and signs in the building spoke of Trust Company's insured status.  By the way, the check presented to the defendant at the closing noted on its face that the funds would be drawn on the Trust Company bank.  The record establishes sufficient evidence to support the verdict.

### III.

Key also argues that evidence of judgments outstanding against him was introduced in contravention of the bar of Fed.R.Evid. 404(b) against evidence of prior acts.  But, it is settled that evidence of other acts is admissible if it is relevant to some issue other than character, is sufficiently proven to allow a jury finding that the defendant committed the extrinsic acts, and satisfies the requirements of Fed.R.Evid. 403.  *United States v. Lampley,* 68 F.3d 1296, 1299 (11th Cir.1995).  Here, the outstanding-judgments evidence went to motive:  they provided Key an incentive to lie about his identity because people against whom large and still enforceable judgments are outstanding are unlikely to be extended credit.  Also, the accuracy of the extrinsic evidence is uncontested.  And, the government introduced no evidence of the circumstances surrounding the prior judgments, and so any resulting prejudice was minimal.  This claim is meritless.

### IV.

Key also alleges abuse of discretion in the district court's denial of a continuance following a superseding indictment containing new factual allegations.  Three days before trial, Key was arraigned on a superseding indictment.  He argues the new

indictment required factual research, legal research, and time to draft certain motions, all of which he was denied by the district court's decision. But, this court's holding in *United States v. Petit,* 841 F.2d 1546, 1554 (11th Cir.1988), makes clear that the district court has substantial discretion in this regard, and the defendant must show significant prejudice to demonstrate abuse of that discretion. The defendants in *Petit* saw a superseding indictment returned two working days before the trial, which made amended factual assertions that, much like the amendments here, might have shifted the focus of the defendants' theory of the case. But, as with the unsuccessful claim made in *Petit,* Key was already on notice of the nature of the overall factual dispute; and he has not identified specific legal action that was foreclosed by the little time he had. We conclude there was no abuse of discretion.

Key's conviction is AFFIRMED.