[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-14485

_____

D. C. Docket No. 07-14030-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KURT D. ANDERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 20, 2009)

Before MARCUS and PRYOR, Circuit Judges, and EDENFIELD,* District Judge.

_____

* Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

PER CURIAM:

Appellant Kurt D. Anderson appeals his convictions, after a jury trial, on multiple counts of robbery and a variety of firearms violations. His challenges are based on three grounds: first, he says the district court abused its discretion in denying a motion to continue his trial; second, the district court abused its discretion in failing to order an evaluation of Anderson's mental competency and sanity under 18 U.S.C. §§ 4241 and 4242; and, finally, the district court erred in publishing to the jury an unredacted version of the superseding indictment that included the nature of Anderson's prior conviction, after he had stipulated that he was a convicted felon. After thorough review, we affirm.

I.

The factual and procedural history are straightforward. Anderson and his co-defendant, and close friend, Leon D. Clarke were riding in Clarke's Mazda automobile when it broke down in Lake Worth, Florida on January 23, 2007. The pair decided to steal another car and then leave Florida, so they had a friend bring them to the Boynton Beach Mall. At the mall, Anderson and Clarke, armed with handguns, walked to the parking lot of the LongHorn Steakhouse and attempted, but failed, to carjack a Lexus (the "Lexus Carjacking"). They then moved to the parking lot of another nearby restaurant where they carjacked an Oldsmobile at gun

2

point, and stole the victims' wallet and purse (the "Oldsmobile Carjacking"). Anderson and Clarke drove the Oldsmobile to Anderson's residence and counted the stolen money. They determined that they did not have enough money to leave Florida, and discussed robbing a Publix Supermarket (the "Publix Robbery").

On February 3, 2007, at approximately 9:30 pm, Anderson and Clarke drove the Oldsmobile to the Publix Supermarket in Port St. Lucie, Florida to commit the Publix Robbery. They entered the supermarket, with Anderson carrying a rifle and Clarke carrying two handguns. Anderson pointed the rifle at the store manager while Clarke pointed the handguns at a cashier, and they demanded that the cashier open the register. Clarke said to the cashier, "You have three seconds to open the register or I'll shoot you." After Clarke took $1700 from the register, he and Anderson drove to Anderson's residence to count the stolen money.

Later that evening, the pair drove to Stuart, Florida to rob a Texaco gas station (the "Texaco Robbery"). Clarke remained in the car, while Anderson, carrying both handguns, went inside the convenience store, pointed both weapons at the cashier, and demanded that the cashier give him the money in the register and a bag to place it in. The cashier complied with Anderson's demands. Anderson observed the store's video monitor and instructed the cashier to give him the tape from the monitor. The cashier could not remove the tape from the

3

recorder, so Anderson smashed the recorder with his handgun and fired one bullet into the recorder and another bullet into the video monitor. Anderson then fled the store.

As Anderson and Clarke drove away from the Texaco station, they counted the stolen money (approximately $500), and discussed stealing still another car to use to drive to Georgia. After midnight, on the morning of February 4, 2007, Anderson and Clarke drove by a Sunoco gas station, saw an Audi pulled up to a gas pump, and carjacked the vehicle (the "Audi Carjacking"). Specifically, Anderson approached the driver's side of the Audi, pointed a handgun at the driver, and demanded that he get out of the car and leave his wallet, cell phone, and keys; the driver complied. Anderson drove away in the Audi and Clarke followed in the Oldsmobile.

Anderson and Clarke proceeded north on Interstate 95 in the two stolen vehicles and, eventually, consolidated themselves and their belongings in the Audi, switched the license plates on the Audi and the Oldsmobile, poured gasoline over the Oldsmobile, lit it on fire, and then left in the Audi. Anderson and Clarke traveled to Atlanta, Georgia. Clarke was arrested soon thereafter on the evening of February 8, 2007, and Anderson was arrested early in the morning of February 9, 2007. After his arrest, Anderson admitted that he had stolen the Audi, but denied

4

he had brandished a firearm at the time of the theft. At first, Anderson also denied any involvement with the Publix Robbery, but subsequently admitted that he and Clarke had robbed the Publix supermarket. Law enforcement officers recovered Anderson's .357 caliber revolver inside an air conditioning vent in the hotel room occupied by Anderson and Clarke just before their arrests. Other firearms, ammunition, and more items used by Anderson and Clarke during their crime spree were found in the Audi automobile.

A federal grand jury in the Southern District of Florida indicted Anderson and Clarke on April 26, 2007 for: (1) conspiring to obstruct, delay, and affect interstate commerce by robbing the Publix Supermarket, in violation of 18 U.S.C. § 1951(a); (2) obstructing, delaying and affecting interstate commerce by robbing the Publix Supermarket, in violation of 18 U.S.C. §§ 1951(a) and 2; (3) carrying and brandishing a firearm in relation to a crime of violence (the Publix Robbery), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii); (4) possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (5) conspiring to carjack the Audi, in violation of 18 U.S.C. § 2119; (6) carjacking the Audi with the intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 2119 and 2; (7) carrying and brandishing a firearm during and in relation to a crime of violence (the Audi

5

Carjacking), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii); and (8) possessing a firearm after being convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment charged Anderson and Clarke with eight felony counts arising out of two criminal episodes -- the Publix Robbery and the Audi Carjacking. Co-defendant Clarke alone was charged with attempting to commit the Lexus Carjacking with intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 2119 and 2; committing the Oldsmobile Carjacking with intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 2119 and 2; and carrying and discharging a firearm during and in relation to a crime of violence (the Lexus Carjacking and the Oldsmobile Carjacking), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii).

On June 7, 2007, Anderson filed an unopposed motion for a mental competency and sanity evaluation pursuant to 18 U.S.C. §§ 4241 and 4242. The magistrate judge granted this motion and ordered an evaluation. However, defense counsel then hired its own expert to examine Anderson, and, thereafter, reported to the magistrate judge that this examination resulted in a report that Anderson was competent to stand trial. Six days later, the district court issued a sua sponte order vacating the magistrate judge's order for a competency and sanity evaluation because Anderson was "examined by a privately retained medical physician and

6

was deemed competent." Notably, Anderson did not object to the district court's order or otherwise challenge it before or during the trial.

On June 4, 2007, Anderson filed his first motion to continue the trial, urging that the continuance was necessary because of the voluminous evidence in the case. The district court denied this application the next day. The defendant again moved for a continuance on June 7, 2007, arguing that a continuance was required in order to complete the competency and sanity evaluation. The magistrate judge effectively granted the motion when he ordered the defendant to be evaluated within 45 days.

On June 20, 2007, Anderson filed his third motion to continue the trial, stating that he had been advised by the government that a superseding indictment would be sought and, as a result, he would need more time to review "additional videos, witness statements, and other evidence."

On June 21, 2007, the grand jury returned a superseding indictment, which added six charges against Anderson. The superseding indictment added counts that Anderson committed the Texaco Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; carried and discharged a firearm during and in relation to a crime of violence (the Texaco Robbery), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii); and possessed a firearm after previously having been convicted of

a felony offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He was also charged with attempting to commit the Lexus Carjacking with intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 2119 and 2; committing the Oldsmobile Carjacking with intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 2119 and 2; and carrying and discharging a firearm during and in relation to a crime of violence (the attempted Lexus Carjacking), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii). As a result of the superseding indictment, Anderson faced fourteen felony charges in all arising out of five separate criminal episodes -- the Publix Robbery, the Texaco Robbery, the Audi Carjacking, the attempted Lexus Carjacking, and the Oldsmobile Carjacking.

After the superseding indictment was filed, the government informed the district court that there was no additional evidence pertaining to the Texaco Robbery or the other newly charged crimes that was not already in Anderson's possession.[1] The district court denied the continuance request that day and Anderson's trial was set for July 2, 2007. On June 25, 2007, Anderson asked the court to reconsider the denial of his motion for a continuance, but, in that motion,

---

[1] Co-defendant Clarke entered a plea of guilty on June 22, 2007, to conspiring to commit the Publix Robbery, committing the Publix Robbery, brandishing a firearm during the Publix Robbery, conspiring to commit the Audi Carjacking, committing the Audi Carjacking, attempting to commit the Lexus Carjacking, committing the Oldsmobile Carjacking, and brandishing a firearm during the attempted Lexus Carjacking, and agreed to testify on behalf of the United States.

the defendant conceded that he had received all of the pertinent discovery concerning the Texaco Robbery before the superseding indictment was returned. The district court denied the motion and the jury trial began as scheduled on July 2, 2007.

After three days of trial, the jury convicted Anderson of eleven counts, including conspiring to commit the Publix Robbery; committing the Publix Robbery; carrying and brandishing a firearm during the Publix Robbery; being a felon in possession of a firearm during the Publix Robbery; committing the Texaco Robbery; carrying and discharging a firearm during the Texaco Robbery; being a felon in possession of a firearm during the Texaco Robbery; conspiring to commit the Audi Carjacking; committing the Audi Carjacking with the intent to cause death or serious bodily harm; carrying and brandishing a firearm during the Audi Carjacking; and being a felon in possession of a firearm during the Audi Carjacking. He was acquitted of all charges concerning the attempted Lexus Carjacking and the Oldsmobile Carjacking. Following his convictions, in a motion for a new trial, Anderson renewed his claim that the denial of a continuance prejudiced him, because he needed more time to prepare a defense to the new charges. The district court denied this motion too.

On September 5, 2007, Anderson was sentenced to an aggregate prison term

of 789 months, which was comprised of a Sentencing Guideline sentence of 105 months and consecutive 18 U.S.C. § 924(c) sentences of 7 years, 25 years, and 25 years, followed by five years of supervised release. The court also ordered Anderson to pay restitution in the amount of $2,127.38, and a special assessment of $1,100.

This timely appeal ensued.

## II.

First, Anderson argues that he was entitled to at least a 30-day continuance after the return of the superseding indictment because that indictment added six new counts against him arising out of the Texaco Robbery, the attempted Lexus Carjacking, and the Oldsmobile Carjacking. He says that the new charges amounted to a substantial change in the case and that he was substantially prejudiced by the failure to provide him with more time to prepare his defense.

We review the district court's denial of a motion for a continuance for an abuse of discretion. United States v. Valladares, 544 F.3d 1257, 1261 (11th Cir. 2008). We can discern no such abuse here.

Under the Speedy Trial Act, "[u]nless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel . . . ." 18 U.S.C. § 3161(c)(2).

The Supreme Court has clearly held that 18 U.S.C. § 3161(c)(2) does not create a right to an additional thirty days after a superseding indictment is filed. United States v. Rojas-Contreras, 474 U.S. 231, 234-36 (1985); United States v. Brantley, 68 F.3d 1283, 1288 (11th Cir. 1995) ("The mandatory 30-day trial preparation period provided by the Speedy Trial Act is not automatically restarted upon the filing of a superseding indictment."). Accordingly, the district court did not violate the Speedy Trial Act in denying Anderson's motion for a continuance.

Thus, the essential question before us is simply whether the district court abused its considerable discretion in denying Anderson's motion for a continuance. The district court has "broad discretion to grant additional periods for trial preparation when a superseding indictment is returned if such an extension is necessary to meet the 'ends of justice'; thus, the test is one of prejudice." United States v. Watkins, 811 F.2d 1408, 1411 (11th Cir. 1987). Accordingly, "[i]f a superseding indictment makes only insubstantial changes in an original indictment, so that a defendant has not been deprived of adequate time to prepare a defense, no prejudice has inhered; and it is not an abuse of discretion to go to trial without further delay." Id. (quotation marks, ellipses, and citation omitted).

"To prevail on such a claim, a defendant must show that the denial of the motion for continuance was an abuse of discretion which resulted in specific

11

substantial prejudice." United States v. Verderame, 51 F.3d 249, 251 (11th Cir. 1995). To make such a showing, the defendant must identify relevant, non-cumulative evidence that would have been presented if his request for continuance had been granted. United States v. Saget, 991 F.2d 702, 708 (11th Cir. 1993); Valladares, 544 F.3d at 1264 ("[I]n order to show specific, substantial prejudice, the defendant must present evidence indicating a different outcome had the motion for a continuance been granted."). As we said in Verderame, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." 51 F.3d at 251 (citation omitted).

Previously, we have concluded that a district court did not abuse its discretion in denying a motion for a continuance when a superseding indictment containing new factual allegations was filed three days before trial, because the defendant was on notice of the nature of the overall factual dispute and the defendant did not identify a specific legal action that was actually foreclosed by a time constraint. United States v. Key, 76 F.3d 350, 354 (11th Cir. 1996). Similarly, in United States v. Petit, we held that a district court did not abuse its discretion in denying a continuance after a superseding indictment, which made

12

amended factual assertions that might have altered the focus of the defendant's theory of the case, and was returned two days before trial, because the defendant had prior notice of the acts he was charged with and because the defendant did "not point[] to any important preparatory work which [his attorney was] compelled to leave undone because of the change in the indictment." 841 F.2d 1546, 1554-55 (11th Cir. 1988) (quotation marks and citation omitted).

In this case, the district court did not abuse its discretion in refusing to grant a continuance. The superseding indictment amended the original indictment in two respects: (1) it added Anderson as a named defendant to the charges that had already been filed against his co-defendant concerning the attempted Lexus Carjacking and the Oldsmobile Carjacking, and (2) it added charges against Anderson arising from the Texaco Robbery. Anderson was provided with the overwhelming bulk of the evidence that the government intended to present against him on May 15, 2007, nearly a month and a half before his trial began. Although the Texaco Robbery charges were new substantive charges and the evidence in support of those charges was not included in the government's May 15, 2007 evidentiary production, Anderson concedes that he possessed all of the essential evidence upon which the government relied in bringing those charges at least twenty-four days before the trial began. Particularly, as part of its notice of intent

13

to introduce evidence of bad acts against one or both of the defendants, on June 6, 2007 the government provided Anderson with witness statements regarding the Texaco Robbery and an expert report linking shell casings and ammunition found at the scene to the handgun found in Clarke's possession when he was arrested. Indeed, the major piece of evidence that the government presented in support of the Texaco Robbery -- the testimony of Clarke -- was the same evidence underlying the government's case on all of the other charges brought against Anderson, and Anderson was made aware that Clarke might testify against him some two and a half weeks before his trial began.

Perhaps most importantly, Anderson has failed to identify a single piece of specific, non-cumulative evidence that he would have presented if the motion for a continuance had been granted. Indeed, in his motion for a continuance he stated only that he needed more time to review "additional videos, witness statements, and other evidence." He repeated this general claim in his motion to reconsider the denial of his motion for a continuance. Although now Anderson argues that he would have used the additional time to hire a voice-identification expert, he did not articulate that rationale at the time he requested the continuance. Because that argument was not properly raised before the trial court at the time the motion for a continuance was filed and determined, we need not consider it. See Verderame, 51

14

F.3d at 251 (explaining that a court reviewing a denial of a motion for a continuance should focus on the rationale offered by the party seeking the continuance). In any event, the argument is unavailing. Anderson has not put forth what specific, non-cumulative evidence a voice-identification expert would offer and only contends, at a high order of abstraction, that "it is likely" the expert could establish that the witness's testimony about the voice of the perpetrator was of doubtful credibility. Quite simply, this is not enough to establish an abuse of discretion.

The defendant also argues that the district court abused its discretion in denying his motion for a competency and sanity evaluation. On this record, the district court did not abuse its discretion in vacating the grant of Anderson's motion for a mental competency and sanity evaluation under 18 U.S.C. §§ 4241 and 4242. See United States v. Nickels, 324 F.3d 1250, 1251 (11th Cir. 2003) (explaining that this Court reviews the denial of such a motion for an abuse of discretion).

Section 4241 of Title 18 provides, in pertinent part, that "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant . . . may file a motion for a hearing to determine the mental competency of the defendant," which the court shall grant only "if there

is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent . . . ." 18 U.S.C. § 4241(a). Further, "[p]rior to the date of the hearing, the court <u>may</u> order that a psychiatric or psychological examination of the defendant be conducted . . . ." 18 U.S.C. § 4241(b) (emphasis added). The language of those provisions is precatory rather than mandatory -- the district court may, not must, provide for a court-ordered examination of the defendant -- and the district court need only grant the hearing, much less the motion itself, when there is reasonable cause to believe the defendant is suffering from a mental defect.

Our law is likewise clear that it is within the province of the district court to make a competency evaluation under 18 U.S.C. § 4241 based upon its own evaluation of the defendant. <u>United States v. Cruz</u>, 805 F.2d 1464, 1479 (11th Cir. 1986) ("[A] trial court may rule on a § 4241 motion of incompetency without benefit of a full dress hearing so long as the court has no 'bona fide doubt' as to the competence of the defendant."). "The legal test for competency is whether the defendant had 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he had a 'rational as well as factual understanding of the proceedings against him.'" <u>Id.</u> (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1960)).

16

Anderson did not present any bona fide doubt as to his competency to stand trial. Indeed, the analysis provided by Anderson's own hired mental health expert and presented by counsel to the court was unequivocal that Anderson was not suffering from a mental disease or defect and that he was competent to stand trial. Moreover, Anderson never challenged the district court's determination at the time it was made and never asserted that he was incompetent to proceed to trial or that he could not assist in his own defense. Under these circumstances it was well within the discretion of the district court to determine that the defendant had knowingly withdrawn his request for a competency and sanity evaluation, and, that, in any event, the defendant was not entitled to one.

Finally, Anderson argues that he must receive a new trial, because the district court erroneously published an improperly redacted copy of the superseding indictment that disclosed the nature of Anderson's previous felony conviction, despite his stipulation that he was a convicted felon. Specifically, the felon-in-possession charges in the indictment said that Anderson had previously been convicted of "tampering with evidence and resisting an officer with violence" in June 2007, in the Nineteenth Judicial Circuit in Marin County, Florida. The district court was advised that Anderson stipulated he was a convicted felon in exchange for a redaction from the indictment of any reference to the nature of his

17

prior conviction, and the district court granted the motion. However, the district court did not redact the nature of the prior felony conviction from the superseding indictment that was published to the jury at the close of trial.

In fact, neither Anderson nor the government objected to the publication of the superseding indictment containing the nature of the charge, the date of the conviction and the name of the court, before it was sent to the jury, even though, immediately before it was published, the courtroom deputy used a white-out pen to redact parts of the superseding indictment, and did so in front of the parties to ensure that the offending information was removed. It was not until after the jury had returned its verdict and was excused that Anderson realized a mistake had been made and moved for a mistrial. Despite the mistake, the government argued that the defendant was not prejudiced and the error was harmless. The government pointed out that the jury had acquitted Anderson on three counts and that if the defendant had actually been prejudiced the jury would have convicted him on all counts. The district court denied the defendant's motion for a new trial.

Because the defendant stipulated that he was a convicted felon, the details surrounding Anderson's prior offense should not have been given to the jury. See Old Chief v. United States, 519 U.S. 172, 174 (1997) (holding that a district court abuses its discretion when it rejects the parties' stipulation that a defendant was a

18

convicted felon "when the purpose of the evidence is solely to prove the element of prior conviction").

However, because Anderson did not raise any objection to the superseding indictment at the time it was submitted to the jury, the defendant undeniably bears some responsibility for the mistake. Moreover, Anderson does not directly say just how he was prejudiced by the improperly redacted indictment, instead suggesting only that he was convicted because the jury concluded that he had the propensity to commit the charged offenses on the basis of his prior conviction.

In fact, the government presented overwhelming evidence of Anderson's guilt at trial. See United States v. Harriston, 329 F.3d 779, 789 (11th Cir. 2003) ("[A]n error in admitting evidence of a prior conviction was harmless where there is overwhelming evidence of guilt."). Among other things, co-conspirator Clarke testified against Anderson at trial, detailing all of the various crimes they committed together; the government presented substantial incriminating physical evidence recovered from Anderson's hotel room in Atlanta as well as from the scenes of the several crimes; victim witnesses from the attempted Lexus Carjacking, the Oldsmobile Carjacking, the Publix Robbery, the Audi Carjacking, and the Texaco Robbery testified against Anderson; the government presented evidence that Anderson confessed to committing the Publix Robbery and the Audi

19

Carjacking; and there was store-video confirmation of the Publix Robbery. Tellingly, Anderson has not challenged the sufficiency of the evidence supporting any of his convictions.

We add that the nature of Anderson's prior conviction would not necessarily have led the jury to conclude that he had a propensity to commit the charged offenses. The nature of the prior conviction (tampering with evidence and resisting an officer with violence) differs considerably from the charged offenses (brandishing firearms during robberies and carjackings). Indeed, the prior conviction made no reference whatsoever to firearms. See Old Chief, 519 U.S. at 185 (explaining that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant," particularly "[w]here a prior conviction was for a gun crime or one similar to other charges in a pending case"). Furthermore, the nature of Anderson's prior conviction was not so heinous as to automatically induce prejudice.

Moreover, the fact that the jury acquitted Anderson of multiple counts contained in the superseding indictment -- those arising out of the attempted Lexus Carjacking and the Oldsmobile Carjacking -- suggests that the jury had little difficulty in separating Anderson's prior conviction from the many charges it considered.

20

Finally, the district court's extensive limiting instruction during the voir dire process mitigated any possibility of unfair prejudice that may have resulted from the jury seeing the unredacted, superseding indictment. The district court told the jury with great clarity that, while it would hear evidence of the defendant's prior felony conviction in connection with the charge that he had unlawfully possessed a firearm, it was important to understand that the defendant was not on trial for the prior felony, that it was simply an element of the charge, and that the nature of the felony was irrelevant. On this record, the district court did not abuse its discretion in denying Anderson's motion for a new trial.

**AFFIRMED.**